Bart F. Virden, judge, dissenting. I respectfully dissent because I believe that the trial court erred in granting summary judgment regarding the issue of the presence of a trap or hidden and inherent danger, and I disagree with the conclusion that there was no evidence to support the existence of a duty owed by ISC to Aalyah Jerwan. I. Attractive Nuisance I agree with the majority that the crux of this appeal is whether the submerged truck-bed liner obscured the nature of the retention pond; however, I believe that the appellants presented facts sufficient to give rise to a question for the jury regarding whether the submerged truck-bed liner constituted a dangerous instrumentality that was attractive to children and about which they could not realize the danger. The majority states that the truck-bed liner was partially submerged, though not entirely hidden and that “it did not mask the inherently dangerous nature of the porid, which was open and obvious.” Herein lies the substance of this dissent: whether the partially visible truck-bed liner, which created an ideal place for children to play, was the condition to which the children were specifically attracted, and whether the truck-bed liner created the dangerous illusion of shallow water where the water was deep—a hidden danger that hswas not open and obvious. I believe that the appellants provided sufficient proof to raise that question to a jury. Many of the following facts are stated in the majority opinion; however, they bear repeating. It is undisputed that the Crutcher Street Apartments, where many children live, are located about 700 feet from the pond. Appellants presented photographs showing the bed liner and the deceptively shallow appearance created by the bed liner. A police-report transcript of the call requesting that a water rescue was needed sets forth that “[tjhere is a truck-bed liner over here, looks like they were playing on it.” Another police report states that Aalyah’s body was found in six to seven feet of water, fifteen feet north of the spot on the south bank where the bed liner was positioned. The officer stated that the pond was large and murky, particularly so around the truck-bed liner. In the report, the officer noted footprints around the bed liner. Another report sets forth that “by all accounts” the children were playing tag in the shallow edge of the water. There were differing accounts of how Aalyah came to fall into the deeper water; however, any discrepancy in the testimony would be for the jury to weigh. See Aronson v. Harriman, 321 Ark. 359, 374, 901 S.W.2d 832, 840 (1995) (It is within the province of the jury to weigh the credibility of the witnesses.). The majority holds that “the truck-bed liner, although partially submerged, was not hidden, and it did not mask the inherently dangerous nature of the pond, which was open and obvious.” By contrast, I would hold that a reasonable conclusion a jury could reach is that, the partially submerged truck-bed liner constituted a hidden trap or danger by creating the illusion of safe, shallow water where the water was deep and that the truck-bed liner itself was specifically sought out by the children playing on the lot. |14I cannot foresee what a jury would conclude; I can only say that it is the province of a jury to decide the questions raised by the facts of this case. Given that reasonable minds .could differ as to the conclusions that can be drawn from the facts presented, summary judgment should not have been granted in regard to the attractive nuisance claim. II. Negligence The majority states that even if the jury had concluded that Aalyah was a licensee rather than a trespasser, the facts presented to the trial court still support its dismissal of the negligence claims. I respectfully disagree with this holding. Appellants presented sufficient evidence to support the existence, of a duty owed by ISC to Aalyah. I will base my discussion of negligence on the assumption that she was a licensee rather than a trespasser, as I believe it is clear that a jury could find that Aalyah was a licensee. . It is helpful to restate the duty of care owed to a licensee. In Bader v. Lawson, 320 Ark. 561, 564-65, 898 S.W.2d 40, 42-43 (1995), our supreme court set forth that [a] landowner owes a licensee the duty to refrain from injuring him or her through willful or wanton conduct. To constitute willful or wanton conduct, there must be a course of action which shows a deliberate intention to harm or utter indifference to, or conscious disregard of, the safety of others. If, however, a landowner discovers a licensee is in peril, he or she has a duty of ordinary care to avoid injury to the licensee. The duty takes the form of warning'd licensee of hidden dangers if the licensee does not know or have reason to know of the conditions or risks involved. (Emphasis added.) Based on the facts presented, the owners of the vacant lot should have known that children, who live so close by, would come onto the premises. The truck-bed liner located on the south bank of .the retention pond presented a danger that was not open and obvious |1fito licensees who. went onto the property, as discussed above. Knowing that children could be in peril because of this hidden, dangerous condition, the owners had a duty to warn them of it. All parties agree that there was no fence blocking off the area, and no warning signs had been posted. These facts are sufficient to show that ISC negligently breached its duty of care to Aalyah. The appellants presented a prima facie case of negligence, and the trial court erred in dismissing the claim. Last, I would like to note that discovery was ongoing at the time the motion to dismiss was filed, and I believe that the appellants were deprived of the opportunity to fully develop the facts of this case when'summary judgment was granted. I respectfully dissent. Murphy, J., joins.